**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| **JAMES D. DAVIS et al.**, | : | **CIVIL ACTION NO.** |
| | : | **3:04-CV-068 (CAR)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF LOGANVILLE, GEORGIA and** | : | |
| **JAMES D. BRIGHT, individually and** | : | |
| **in his official capacity as Assistant Chief** | : | |
| **of the City of Loganville Fire Department,** | : | |
| | : | |
| **Defendants.** | : | |

_____

### *ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

Currently before the Court are Defendants' Motion for Summary Judgment [Doc. 30] and Plaintiffs' Motion for Partial Summary Judgment [Doc. 35]. For the reasons stated below, Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED in part** and **DENIED in part**, and Plaintiffs' Motion for Partial Summary Judgment [Doc. 35] is **DENIED**.

### BACKGROUND

Plaintiffs are seven firefighters currently or formerly employed by the City of Loganville, Georgia. In this collective action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., Plaintiffs allege that Defendant the City of Loganville, Georgia ("the City") violated the FLSA by failing to compensate them properly for all nonovertime and overtime hours worked. Three of the plaintiffs, Kenneth Durden, Jason Stribling, and James Davis, also assert claims of retaliation arising out of Defendant James Bright's decision, as Acting Fire Chief, to transfer Durden and terminate Stribling and Davis.

The parties have filed cross-motions for summary judgment.  Their motions present three issues: (1) whether the City's pay practices violate the FLSA; (2) whether a two or three year statute of limitations applies to Plaintiffs' claims; and (3) whether Defendants retaliated against Plaintiffs Durden, Stribling, and Davis.

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).  Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence.  See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.  Celotex, 477 U.S. at 323

(internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26.  This evidence must consist of more than mere conclusory allegations or legal conclusions.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  Celotex, 477 U.S. at 323.

The fact that both parties have moved for summary judgment, and thus both parties simultaneously argue that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower the Court to enter judgment as it sees fit.  10 Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 1998).  The proper procedure for evaluating cross-

motions for summary judgment is to assess the merits of each summary judgment motion independently.  Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion.  Id.

### I.      Whether the City's Pay Practices Violate the FLSA

Plaintiffs are seven firefighters currently or formerly employed by the City of Loganville, Georgia.  As firefighters, Plaintiffs are "nonexempt" employees under the FLSA, meaning that they are entitled to FLSA overtime protections.  Loganville firefighters are normally scheduled to work alternating shifts of 24 hours "on" and 48 hours "off."  The firefighters thus work two or three shifts per week, totaling either 48 or 72 hours.  In any event, unless the firefighters elect to take a shift off, they always work more than 40 hours per week.

The Loganville Fire Department operates on a 28-day schedule, meaning that a new work schedule is posted in the fire house every 28 days.  At the end of each schedule, there is a notation of "PPE," which stands for "Pay Period Ending."  During a 28-day scheduling period, the firefighters work nine 24-hour shifts, or 216 hours.[1]

Until recently, the firefighters were paid weekly, and received the same amount each paycheck, regardless of the number of hours worked.  However, the firefighters' pay stubs state that their paychecks cover 40 hours of work per week.  The pay stubs also provide an hourly rate for the firefighters based on a 40-hour workweek.  Furthermore, the time cards and payroll change forms used by the City reference a 7-day, 40-hour workweek.

Any overtime the firefighters earn is paid in compensatory time ("comp time") at a rate of time and a half.  That is, the firefighters receive one and one-half hours of comp time for every one hour of overtime worked.  For example, if a firefighter works 4 overtime hours, he receives 6 hours of comp time.  The firefighters may either use or "cash out" their comp time.  A firefighter "uses" his comp time by taking time off.  When he does so, his comp time bank is

---

[1]        Occasionally, the firefighters are scheduled for a tenth shift, known as a "Kelly day."  This is merely a scheduling device.  The firefighters are not required to appear for work, and are not charged any comp time to cover those days.

4

debited the number of hours taken, and he receives a regular paycheck at the end of the week.  If a firefighter elects to "cash out" his comp time, he receives compensation at the hourly rate reflected on his pay stub—that is, at an hourly rate based on a 40-hour workweek.[2]

Though the parties agree on the above facts, they disagree as to (1) whether the firefighters are "salaried" or "hourly," (2) the number of hours the firefighters are required to work before they are entitled to overtime, (3) the number of hours of work for which their paychecks are intended to compensate them, and (4) whether the City's practice of awarding comp time in lieu of overtime pay while paying the firefighters a salary is proper under the FLSA.

According to Defendants, Loganville firefighters are paid a fixed annual sum, or salary, intended to compensate them for all nonovertime hours worked.  They claim that the firefighters' salary is established each year at the City's budget meeting, and the firefighters receive a weekly paycheck representing 1/52 of that amount.  Additionally, Defendants claim that the City has availed itself of a partial overtime exemption for firefighters and police officers pursuant to section 7(k) of the FLSA, 29 U.S.C. § 207(k), and have adopted a 28-day work period thereunder, meaning that instead of having to pay overtime after a firefighter has worked 40 hours in a week, the City need not pay overtime until the firefighter has worked 212 hours in a 28-day work period.  Finally, Defendants claim that the City properly awarded comp time in lieu of overtime at a rate of time and a half for all hours worked beyond 212 in a 28-day period.

---

[2]     Defendants term this hourly rate a "fictitious" hourly rate.  Defendants claim that the firefighters' "true" hourly rate is calculated by taking a firefighter's annual compensation, dividing it by 13 work periods, and further dividing by 212 hours per work period.  The "fictitious" hourly rate at which Plaintiffs' comp time is "cashed out" is actually higher than what Defendants claim is the firefighters' "true" hourly rate.  Further, both the "true" and the "fictitious" hourly rates are higher than the federal minimum wage.

Plaintiffs, by contrast, argue that the firefighters are "hourly" employees.  According to Plaintiffs, the City tried to pay firefighters a salary, but did not meet the "requirements" imposed by the FLSA for compensating nonexempt employees by salary, therefore making the firefighters "hourly" employees.  Additionally, Plaintiffs argue that the firefighters' weekly paycheck compensates them for 40 hours of work per week, instead of for the 48 or 72 hours they regularly work.  Plaintiffs, therefore, conclude that because the firefighters are "hourly" employees and because their paychecks are intended to compensate them for only 40 hours per week, they are due compensation for hours worked beyond 40 per week.  Plaintiffs also argue that the City adopted a 7-day "work period" pursuant to section 7(k), meaning that the City is required to pay overtime after its firefighters have worked 53 hours in a 7-day period.  Finally, Plaintiffs argue that the City's practice of awarding comp time violates the FLSA.  Specifically, Plaintiffs argue that the FLSA does not permit employers to pay its nonexempt employees a salary and award comp time in lieu of overtime pay, and that the City awards comp time inconsistently.

Having outlined the parties' arguments, the Court will now consider whether summary judgment is appropriate on the above-identified issues.  Before discussing parties' particular claims, the Court will provide a brief outline of the FLSA.

A.      The FLSA

The FLSA is a minimum wage, maximum hour law; its purpose is to set limits on the minimum wages and maximum hours an employee is permitted to work before the employer is required to pay overtime.  29 U.S.C. §§ 206-07; Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1266-67 (4th Cir. 1996).  All that the FLSA requires is that an employee be paid at

6

least the statutory minimum wage for all hours worked, and if no exemption applies, overtime

pay for each hour in excess of the statutory minimum.  Wethington v. City of Montgomery, 935

F.2d 222, 224 (11th Cir. 1991); Bolick v. Brevard County Sheriff's Dept., 937 F. Supp. 1560,

1568 (M.D. Fla. 1996).

The central provisions of the FLSA are its minimum wage and maximum hour

requirements.  29 U.S.C. §§ 206-07; Arnold v. City of Fayetteville, Ark., 910 F. Supp. 1385,

1392 (E.D. Ark. 1995).  Section 206 mandates the hourly minimum wage due to all

employees–no less than $5.15 per hour, while Section 207 dictates maximum work hours.  If an

employer "suffers or permits" an employee to work more than the maximum number of hours,

the employer must pay the employee overtime pay, generally at a rate of one and a half times the

employee's regular rate of pay.

### B.        Whether Loganville Firefighters are Hourly or Salaried

Plaintiffs make much of the fact that Loganville firefighters are "hourly" employees as

opposed to "salaried" employees.  Specifically, Plaintiffs argue that the City tried to pay

firefighters a salary, but did not meet the "requirements" imposed by the FLSA for compensating

nonexempt employees by salary, and therefore the firefighters are "hourly" employees.

Having reviewed Plaintiffs' arguments, the regulations and case law cited in Plaintiffs'

briefs, and other FLSA law, the Court is convinced that the Department of Labor regulations do

not create the distinction that Plaintiffs are attempting to draw.  Plaintiffs admit that the FLSA

permits nonexempt employees to be paid on a salary basis, but argue that the Department of

Labor regulations and interpretations[3] dictate limited methods for doing so.  Plaintiffs are correct that the regulations delineate several methods of compensating nonexempt employees on a salary basis.  See, e.g., 29 C.F.R. § 778.113, 778.114.  The regulations, interpretations, and FLSA law cited in Plaintiffs' briefs, however, specifically address "Principles for Computing Overtime Pay Based on the 'Regular Rate.'"  E.g., 29 C.F.R. § 778.113.  As the Court understands them, these regulations delineate methods for calculating an employee's overtime pay when the employee receives a salary; they do not impose requirements for paying a salary in the first instance,[4] nor may they be read to limit the ways that an employer may compensate an employee by salary.

For example, Plaintiffs argue that 29 C.F.R. § 778.113(a) requires an employer to reach a mutual understanding with a nonexempt employee before the employee may be paid a salary.  That provision states:

> "If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, on which time and one half must be paid, is computed by dividing the salary by the number of hours which the salary is ***intended*** to compensate.  If an employee is hired at a salary of $182.70 and if it is ***understood*** that his salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $182.70 divided by 35 hours, or $5.22 an hour."

Plaintiffs appear to argue that the words "intended" and "understood" in the above provision somehow impose a requirement on employers to ensure that nonexempt employees understand

---

[3]    Courts have long-recognized a distinction between "regulations" and official "interpretations" of the Department of Labor.  Monahan, 95 F.3d at 1272 n.10.  In spite of this distinction, however, courts "recognize that the interpretation of a statute by the agency charged with its enforcement ordinarily commands considerable deference." Id.  Further, courts "consider that the rulings, interpretations, and opinions of the [Department of Labor], while not controlling ... do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."  Id.

[4]    One of the regulations cited by Plaintiffs, 29 C.F.R. § 778.114, does impose certain requirements for paying a salary in the first instance.  Plaintiffs concede, however, that this regulation is inapplicable.  The regulation only applies if the employer pays the employee overtime compensation at a rate of one half the employee's regular rate of pay, instead of at one and a half times his regular rate.  Because the City paid its employees overtime at a rate of time and a half, rather than "half-time," the regulation is inapplicable.

the method of compensation before they may be paid a salary.  The Court disagrees with Plaintiffs' reading of this regulation.  As this Court reads the section, the words "intended" and "understood" refer to the understanding required to calculate the regular rate of pay, not the understanding required to provide a salary in the first instance.  To the extent that Plaintiffs claim that there was no understanding or agreement, such a claim bears on the issue of whether overtime compensation was properly calculated, not whether the City may pay its firefighters a salary in the first instance.[5]

Accordingly, to the extent that Plaintiffs seek summary judgment on the issue of whether Loganville firefighters were hourly or salaried, their motion is **DENIED**.  The Court finds that the City's practice of paying its firefighters a salary for nonovertime hours complied with the FLSA.

### C.       The Section 7(k) Exemption

Having determined that Loganville firefighters properly receive a salary for the nonovertime hours they work, the Court will now consider the parties' arguments about the number of hours the firefighters are required to work before they are entitled to overtime compensation.

Under the FLSA, employees generally are entitled to receive overtime compensation at a rate of one and one half times their regular rate for all hours worked in excess of forty per week.

---

[5]       Furthermore, any alleged misunderstanding with respect to the calculation of the firefighters overtime compensation inured to Plaintiffs' benefit.  The City calculated the firefighters' overtime rate based on a 40-hour workweek instead of a longer workweek, which the Plaintiffs admit they actually worked.  This 40-hour "regular rate" produces a higher overtime rate than if the City calculated the "regular rate" based on the number of hours Plaintiffs actually worked.  Though the City may have technically misapplied section 778.113 in calculating Plaintiffs' regular rate based on an artificial number of working hours, courts have discounted such technical misapplications that result in additional income to the employees above the minimum required.  Monahan, 95 F.3d 1277 n.15 ("[A]ny such 'technical mis-application' that results in additional income to employees above the minimum required is no violation of the law.").

29 U.S.C. § 207(a).  Fire departments and other public agencies are partially exempt from this requirement under 29 U.S.C. § 207(k), commonly known as the 7(k) exemption.

Specifically, the 7(k) exemption permits fire departments and other public agencies to require their employees to work a greater number of hours per week before the employees become entitled to overtime compensation.  A public agency invoking the 7(k) exemption must establish a "work period" of at least 7 but nor more than 28 days.  29 U.S.C. § 207(k)(2). Pursuant to these statutory provisions, the Secretary of Labor has, by published regulations, set forth the particular number of hours per work period a firefighter must work before he is entitled to overtime compensation.  29 C.F.R. § 553.230.  For example, under the regulations, if a fire department adopts a 7-day work period, it need not pay overtime compensation until its firefighters have worked over 53 hours in a week.  Id.  If the fire department adopts a 28-day work period, it need not pay compensation until the firefighters have worked over 212 hours in that period.  Id.

The parties here do not dispute that the City of Loganville has availed itself of the 7(k) exemption; however they disagree as to the length of the work period.  The City argues that it has established a 28-day work period, while Plaintiffs claim that the City has established a 7-day work period.

The City has the burden of proving the length of the work period by "clear and affirmative evidence."  See Freeman v. City of Mobile, Ala., 246 F.3d 1292, 1297 (11th Cir. 1998).  Whether an employer has proved that he has adopted a 7(k) work period is a jury question.  Birdwell v. City of Gadsen, Ala., 970 F.2d 802, 805 (11th Cir. 1992); Singer v. City of Waco, Tex., 324 F.3d 813, 818 (5th Cir. 2003). But see Freeman, 246 F.3d at 1297 (affirming

summary judgment in favor of employer); <u>Avery v. City of Talladega, Ala.</u>, 24 F.3d 1337, 1344

(11th Cir. 1994) (same).  The length of a work period may be established by internal memoranda,

public resolutions made on the record, or other evidence.  <u>Freeman</u>, 246 F.3d at 1297.  However,

a public declaration is not required to establish a work period, as long as the employees actually

work a regularly recurring cycle of between 7 and 28 days.  <u>Spradling v. City of Tulsa</u>, 95 F.3d

1492, 1505 (10th Cir. 1996) (citing <u>Birdwell</u>, 970 F.2d at 806).  Furthermore, the work period

need not correspond to the duty cycle or pay period. 29 C.F.R. § 553.224(a); <u>Birdwell</u>, 970 F.2d

at 806.

There is a conflict in the evidence regarding the length of the work period.  To support

their contention that the City adopted a 28-day work period, Defendants point to several pieces of

evidence, including work schedules, which are 28 days in length and which contain a notation of

"PPE" or "pay period ends" at the end; internal spreadsheets, which are organized into 28-day

work periods; and an internal memo dated September 24, 1999 from the City Clerk, Michelle

Deaton, to then-Fire Chief Terry Pilcher, which states that the City operates on a 28-day work

period.  In addition, Defendants point to the deposition testimony of several Plaintiffs

purportedly acknowledging that the City had adopted a 28-day work period.  It is unclear from

the deposition testimony, however whether Plaintiffs understood what they were being asked.

<u>See, e.g.</u>, Stribling Depo [Doc. 39] 30:5-16.

To rebut Defendants' contention that the City adopted a 28-day work period, and to

support their own contention that the City adopted a 7-day work period, Plaintiffs point to several

paychecks, pay stubs, time cards, and payroll change forms, all referencing a 7-day pay cycle.  In

addition, Plaintiffs' expert, Daniel Bremer, calls into question Defendants' contention that the

City adopted a 28-day work period.  Bremer opined that the City attempted to adopt a 28-day work period, but failed to do so.  Bremer testified that comp time was awarded inconsistently, and did not appear to correspond to a 212-hour, 28-day work period, as Defendants claim.  The City Clerk, Michelle Deaton, likewise admitted that comp time was not always awarded on a 212-hour basis.  Cf. Avery, 24 F.3d at 1344 (finding the fact that defendants calculated plaintiffs' overtime in accordance with a 28-day work period to be significant in establishing the length of the work period); Singer, 324 F.3d at 820 (same).

The evidence in the record is sufficient to create a genuine issue of material fact as to the length of the work period.  The length of the work period is normally an issue reserved for the jury; and in this case, the testimony of Daniel Bremer casts doubt on the City's contention that it adopted a 28-day work period.  Further, though the City has produced several documents supporting its position that it adopted a 28-day work period, Plaintiffs have likewise produced a number of documents, as well as an expert opinion, to dispute the City's contention.  Because it is not the province of the Court to weigh the evidence, a jury must decide this issue of fact. Singer, 324 F.3d at 818-19.

Accordingly, the parties' cross-motions for summary judgment on this issue are **DENIED**.

### D.      Gap Time Compensation

Having determined that there is a genuine issue of material fact as to number of hours the firefighters are required to work before they are entitled to overtime compensation, the Court will now consider whether Plaintiffs are entitled to compensation for the nonovertime hours they worked.  As a preliminary matter, the Court notes that Plaintiffs' complaint does not assert a

claim for breach of contract.  Therefore, any claim Plaintiffs have for compensation for the nonovertime hours they worked must arise under the FLSA.  The issue before the Court, then, is whether Plaintiffs' claim for compensation for certain nonovertime hours worked is cognizable under the FLSA.

As discussed above, Plaintiffs allege that their annual base pay was intended to compensate them only for 40 hours of work per week, and that they are due additional compensation for hours worked between 40 and 53 in a 7-day work period, or between 160 and 212 per 28-day period.  This is a typical "gap time" claim, so-called because Plaintiffs seek compensation for hours worked "in the gap" between the 40 (or 160) hours for which they perceive to have been compensated and the 53 (or 212) hour overtime threshold.[6]  The Eleventh Circuit has not addressed whether a gap time claim is cognizable under the FLSA; however, several Courts of Appeal and District Courts in other circuits have.

The prevailing view among those courts that have addressed the issue is that gap time claims are not cognizable under the FLSA as long as the employee has been paid at or above the statutory minimum wage for all nonovertime hours worked.  E.g., Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1273 (4th Cir. 1996); Robertson v. Bd. of County Comm'rs, 78 F. Supp. 2d 1142, 1159 (D. Colo. 1999); Braddock v. Madison County, 34 F. Supp. 2d 1098, 1112 (S.D. Ind. 1998).  Many of those courts have reasoned that such claims involve questions of contract law more appropriately left to resolution in state courts.  Arnold v. City of Fayetteville,

---

[6]     Put differently, the term "gap time" is used to refer to "time that is not covered by the overtime provisions because it does not exceed the overtime limit and ... time that is not covered by the minimum wage provisions because, even though the work is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked."  Adair v. City of Kirkland, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999).

Ark., 910 F. Supp. 1385, 1394 (E.D. Ark. 1995); Braddock, 34 F. Supp. 2d at 1112. The courts have observed that "the core rights and obligations the FLSA creates are the minimum wage levels and entitlement to overtime pay for work above the specified maximum hours" Braddock, 34 F. Supp. 2d at 1112. Accordingly, they have concluded that the "general 'remedial purpose' of the FLSA does not support its expansion to a mechanism for employees to enforce a broad range of employers' contractual obligations beyond the minimum wage and overtime requirements enacted by Congress." Id. In sum, an employee's claim for gap time is cognizable under the FLSA only if, under the terms of the employee's express or implied employment agreement, the employee received less than the statutory minimum wage for all nonovertime hours.

There is an argument to be made that "gap time" claims are cognizable under the FLSA. Adair, 185 F.3d at 1062 n.6 (citing Lamon v. City of Shawnee, Kan., 972 F.2d 1145, 1155 (10th Cir. 1992) ("Lamon II")). At least one court has indicated that the FLSA and the regulations enacted thereunder may be construed to require that an employee be compensated at his "regular rate" for each hour the employer "suffers or permits" him to work. Lamon v. City of Shawnee, Kan., 754 F. Supp. 1518, 1520-21 & n.1 (D. Kan. 1991) ("Lamon I"); see also Schmitt v. Kan., 844 F. Supp. 1449, 1457-59 (D. Kan. 1994) (discussing Lamon I and Lamon II).

Having considered the arguments raised by Lamon and Schmitt, the Court finds itself faced with differing pieces of non-binding authority—on the one hand, Lamon, on the other, Monahan. The Court finds persuasive the view espoused by Monahan that a gap time claim is not cognizable under the FLSA absent a minimum wage or maximum hour violation. Monahan, 95 F.3d 1263, passim. A contrary approach risks expanding the FLSA beyond its remedial

14

purpose to create a mechanism for disgruntled employees to invoke federal jurisdiction to resolve contractual disputes with employers.  Braddock v. Madison County, 34 F. Supp. 1098, 1112 (S.D. Ind. 1998); see also Monahan, 95 F.3d at 1284.

Following the prevailing view, Plaintiffs' gap time claim is not cognizable under the FLSA because it is undisputed that Loganville firefighters received compensation at an hourly rate well-above the statutory minimum wage for the 53 hours worked in a 7-day period, or the 212 hours worked in a 28-day period.  See, e.g., Bremer Depo [Doc. 37] 70:10-71:4 (admitting that Plaintiffs received more than $5.15 per hour for the hours they worked); see also Monahan, 95 F.3d at 1265 (noting that an employee's gap time claim is cognizable under the FLSA only if he has received less than the statutory minimum wage for all nonovertime hours worked).  For example, the record shows that an entry-level firefighter earns an annual base pay of $27,123.00 per year.  Assuming, as Plaintiff argues, the City adopted a 7-day work period, there are fifty two 7-day work periods in one year, and an entry-level firefighter would receive $9.84 per hour for working 53 hours in a 7-day period  ($27,123.00 ÷ 52 ÷ 53 = $9.84).[7]  Because it is undisputed that Loganville firefighters receive an hourly wage well-above the statutory minimum wage, summary judgment on Plaintiffs' gap time claim is appropriate.

Defendants' Motion for Summary Judgment on Plaintiffs' gap time claim is therefore **GRANTED**.  Accordingly, to the extent that Plaintiffs seek compensation for nonovertime hours worked between 40 and 53 in a 7-day work period or between 160 and 212 in a 28-day work period, such claim is denied.

---

[7]     The same would be true if the City has adopted a 28-day work period.  Dividing the firefighters' annual base pay of $27,123.00 by thirteen 28-day work periods and then by 212 hours per work period results in the same $9.84 hourly rate ($27,123.00 ÷ 13 ÷ 212 = $9.84).

### E.       Overtime Compensation

Plaintiffs also claim that Defendants violated the FLSA by awarding comp time in lieu of overtime while paying Plaintiffs a salary.  Plaintiffs argue that the practice of awarding comp time in lieu of overtime is "fundamentally at odds with the 'salary' theory of compensation" the City used to compensate Loganville firefighters.  Plaintiffs, however, fail to cite any legal authority to support their proposition.  The only authority Plaintiffs cite is a Department of Labor handbook provision, which Plaintiffs' expert, Daniel Bremer, identified during his deposition as the basis for his opinion that the two practices were inconsistent.  See Bremer Depo [Doc. 32] 62:12-63:16.[8]  In fact, the Court through its own research, found one case where employees receiving a fixed annual salary were awarded comp time in lieu of overtime pay.  Arnold v. City of Fayetteville, Ark. 910 F. Supp. 1385, 1391 & n.22, n.26 (E.D. Ark. 1995).  The case, however, did not specifically address the issue of whether the FLSA permitted the use of comp time in conjunction with payment of a salary for nonovertime hours.

In light of the paucity of authority to support Plaintiffs' position, the Court is inclined to delay its decision on this issue at this time.  In the event of trial, the Court will direct the parties in the Order for Pretrial to further brief the issue of whether the FLSA prohibits the use of comp time and payment of a salary to nonexempt employees.  The Court also seeks clarification of the meaning of the handbook regulation cited by Plaintiffs and its basis in the FLSA.  Summary judgment on this issue, therefore, is **DENIED.**

---

[8]       Having considered the handbook provision, which Plaintiffs provide as an exhibit to their Motion for Partial Summary Judgment, the Court doubts the provision is applicable to the case at bar.  The handbook provision appears to discuss a method of paying a salary to cover the total amount of the compensation, including overtime compensation.  In this case, however, the firefighters' salary covered only their nonovertime hours.  Plaintiffs received additional compensation (in the form of comp time) for the overtime hours they worked.

In addition, though not fully developed by the briefs, Plaintiffs claim that Defendants'
method of awarding comp time was arbitrary.  Plaintiffs' expert, Daniel Bremer, testified that
Defendants were not paying comp time properly, and appeared to award comp time in an
inconsistent manner.  For instance, after reviewing the payroll records from January 8, 2004
through April 28, 2004, Bremer testified that Plaintiff Rex Morrow was credited six comp time
hours when he worked eight shifts, six comp time hours when he worked seven shifts, no comp
time hours when he worked nine shifts, and six comp time hours when he worked eight shifts.
Because there is a genuine issue of material fact as to whether Plaintiffs were fully and properly
awarded comp time for all overtime hours they worked, summary judgment on this issue is
**DENIED**.

　　　**II.     Statute of Limitations**

　　　Having found a possible FLSA violation, the Court will now consider the applicable
statute of limitations.  The statute of limitations for actions brought under the FLSA is two years
unless the plaintiff can prove that the defendant's violation was willful, in which case it is
extended to three years.  The Supreme Court has defined willful violations as those where "the
employer either knew or showed reckless disregard for the matter of whether its conduct was
prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct.
1677, 1681, 100 L.Ed.2d 115 (1988).  The burden is on the plaintiff to prove that the employer's
conduct was willful.  Spires v. Ben Hill County, 745 F. Supp. 690, 704 (M.D.Ga. 1990).

　　　Plaintiffs have failed to prove that the City's violation of the FLSA, if indeed a violation
occurred, was willful.  In fact, the evidence in the record suggests that the City exercised care in
attempting to devise a pay scheme that complied with the FLSA.  The City Clerk, Michelle

17

Deaton, and the Deputy Clerk in charge of payroll, Kristi Ash, attended classes regarding FLSA compliance.  In addition, Deaton sought advice from Department of Labor investigators regarding its system of paying firefighters.  Deaton also networks with other cities regarding pay systems and FLSA compliance, and receives numerous publications about FLSA compliance.  Though the City's pay plan may have violated the FLSA, it did at least attempt to comply.  See Reich v. Dep't of Conservation & Natural Res., 28 F.3d 1076, 1084 (11th Cir. 1994) (holding that a good faith attempt to comply does not rise to the level of "reckless disregard" required for a willful violation).

The only admissible evidence the Plaintiffs offer to prove that the City acted with reckless disregard is Deaton's admission that she knew "what [she] should have been doing – and [has] known this for years...." Deaton Depo [Doc. 67] 28:2-3.  Deaton's admission, however, refers to the City's practice of calculating the firefighters' overtime "cash out" rate at their "fictitious" hourly rate (as opposed to the firefighters' true hourly rate).  It does not refer to any of the pay practices which this Court has identified as possible FLSA violations: (1) the City's adoption, or failure to adopt, a 7-day or 28-day work period; (2) the City's practice of awarding comp time while paying its firefighters a salary; or (3) the City's possible failure to award comp time for all overtime hours worked.  Furthermore, Deaton testified in the same breath that the reason the City continued calculating the firefighters' overtime "cash out" rate at their "fictitious" hourly rate was that she had checked with the Department of Labor and was told that the practice was fine because it inured to the firefighters' benefit.  Deaton Depo. [Doc. 67] 28:5-6.  Deaton's admission, therefore, is insufficient to prove that the City's violation was willful.  In fact, taken in context, Deaton's statement actually bolsters Defendants' position that the City

18

attempted to devise a pay scheme for its firefighters that complied with the FLSA.

Because Plaintiffs have offered no other admissible evidence to prove that the City's violation of the FLSA was willful, Defendants' Motion for Summary Judgment on this issue is **GRANTED**, and Plaintiffs' Motion for Summary Judgment is **DENIED**.

### III.      Plaintiffs' Retaliation Claims

Plaintiffs Durden, Davis, and Stribling have asserted retaliation claims against the City and Defendant Bright, which arise out of Bright's decision, as Acting Fire Chief, to terminate Davis and Stribling, and transfer Durden.  Plaintiffs allege that the present lawsuit was filed on July 7, 2004, and that one day after the lawsuit was filed, on July 8, 2004, Defendant Bright fired Stribling for lying about not talking to Davis about the lawsuit.  Two days later, on July 10, 2004, Defendant Bright reprimanded Davis in front of other firefighters and potential plaintiffs.  During this reprimand, Bright allegedly told Davis that he was "not going to let Davis destroy the Fire Department" with his lawsuit.  Bright then fired Davis for "conduct on or off duty which adversely affects morale."  Then, on July 12, 2004, Durden was transferred from the Fire Department to Planning Department.  Durden's transfer did not affect his position, compensation, rank, title, or job duties.  The only thing about Durden's job that changed as a result of the transfer is the location.

Following Durden's transfer, Plaintiffs moved for a preliminary injunction on July 15, 2004.  The Court held a preliminary injunction hearing on July 16, 2004.  By the time the hearing was held, the majority of the issues had been resolved, and Stribling and Davis were reinstated to the positions they held prior to their termination.  Neither lost any pay or other employment benefit.

19

Defendants move for summary judgment on Plaintiffs' retaliation claims, arguing that the claims fail because Plaintiffs cannot establish an adverse employment action.  Retaliation claims under the FLSA are analyzed using the familiar <u>McDonnell Douglas</u> framework applied to retaliation claims under Title VII, the ADEA, and the ADA.  <u>Burnette v. Northside Hosp.</u>, 342 F. Supp. 2d 1128, 1133 (N.D. Ga. 2004).  A plaintiff may establish a prima facie case of retaliation under the FLSA by showing: (1) he engaged in a protected activity; (2) he subsequently suffered an adverse action by the employer, and (3) a causal connection existed between the employer's activity and the adverse action.  <u>Wolf v. Coca Cola Co.</u>, 200 F.3d 1337, 1342 (11th Cir. 2000). An adverse employment action is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'"  <u>Gupta v. Bd. of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000).

### A.      Durden's Transfer

Defendants argue that Durden's transfer is not an adverse employment action because it did not alter his compensation, the terms, conditions, or privileges of employment.  It is undisputed that Durden receives the same amount of compensation for the job he performs, retains the same rank and title, and job duties.  In fact, the only thing that has changed with respect to Durden's position is the location.  Furthermore, Durden has testified that the change in location makes his job easier.  Courts have held that this type of lateral transfer, which involves only a change in work location, and does not involve a change in pay, job duties, or prestige, does not rise to the level of an adverse employment action.  <u>See Burnette</u>, 342 F. Supp. 2d at 1136-38 (holding that a lateral transfer which does not affect an employee's pay, job duties, or

job prestige but which increases the employee's commute does not amount to an adverse

employment action sufficient to support a retaliation claim, and collecting cases from other

courts reaching the same result).  Because Durden cannot establish that the decision to transfer

him to a different location was an adverse employment action, he has failed to make out a prima

facie case of retaliation.  Defendants' Motion for Summary Judgment on Durden's retaliation

claim, therefore, is **GRANTED**.

> **B.      Davis's and Stribling's Terminations**

Determining whether Defendants are entitled to summary judgment on Davis's and

Stribling's retaliation claims is slightly more difficult.  The terminations of Davis and Stribling

are unquestionably adverse employment actions; however, Defendants argue that the actions are

not adverse because Davis and Stribling were reinstated without loss of pay or other benefits

shortly after they were terminated.  Plaintiffs, on the other hand, argue that they are entitled to

damages for the expenses they incurred in seeking a temporary restraining order to obtain their

reinstatement.

There is precedent that appears to support Defendants' contention.  The Eleventh Circuit

has held that "a proposed action that is corrected as soon as the proper official is made aware of it

and before it goes into effect so that the employee does not actually suffer any consequence, is

not adverse."  Gupta v. Bd. of Regents, 212 F.3d 571, 588 (11th Cir. 2000).

In this case, however, Davis and Stribling allege that they <u>did</u> suffer consequences before

they were reinstated: they argue that they incurred expenses in moving the Court for a temporary

restraining order to obtain their reinstatement.  Permitting Plaintiffs to recover the costs of

seeking their reinstatement appears consistent with the purpose of the FLSA and its anti-

retaliation damages provision.  See Bogacki v. Buccaneers Ltd. P'ship, 370 F. Supp. 1201, 1202 (M.D. Fla. 2005) (recognizing that the purpose of the FLSA anti-retaliation provision is to "remove fear so that employees feel free to report the wage and overtime violations of their employer to ensure that compliance with the Act is enhanced.") (citing Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); Bailey v. Gulf Coast Transp., Inc., 280 F.3d 1333, 1116-37 (11th Cir. 2002)); see also Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 934 (11th Cir. 2000) (recognizing that the purpose of the FLSA anti-retaliation damages provision is to provide full compensation to an aggrieved plaintiff by putting him in the position he would have occupied absent the employer's misconduct).  Though the evidence may ultimately show that Defendants rescinded the terminations before Plaintiffs applied for a temporary restraining order, there is presently a genuine issue of material fact as to whether Davis and Stribling suffered consequences before they were reinstated.  Accordingly, Defendants' Motion for Summary Judgment on Davis's and Stribling's retaliation claims is **DENIED**.

## CONCLUSION

For the aforementioned reasons, the Court finds that Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED in part** and **DENIED in part**, and Plaintiffs' Motion for Partial Summary Judgment [Doc. 35] is **DENIED.**

**SO ORDERED** this 27th day of March, 2006.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

AEG/ssh