IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JAMES D. DAVIS, et al, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | 3:04-CV-068 (CAR) |
| | : | |
| CITY OF LOGANVILLE, GEORGIA, | | |
| a municipal corporation, | : | |
| | : | |
| Defendant. | : | |

_____

**ROYAL, District Judge**

This case is before the Court on Defendant's "Motion to Exclude Expert Testimony of Plaintiff's Expert Daniel Wayne Bremer." [Doc. 31]. Through this motion Defendant seeks to exclude Bremer's expert testimony and his expert report under Federal Rule of Evidence 702. The parties waived a Daubert hearing and asked the Court to decide the issues on the briefs and the evidence submitted. Having reviewed the briefs, the deposition of Daniel Wayne Bremer, his report, and other evidence; and then having analyzed the relevant case authority in light of the evidence, the Court **GRANTS** Defendant's motion in part and **DENIES** it in part.

The Court grants Defendant's motion and excludes all expert opinions by Bremer that Loganville firefighters are due compensation at their regular rate of pay for certain nonovertime hours worked. The Court also excludes all expert opinions by Bremer that Defendant acted with reckless disregard in violating the Fair Labor Standards Act. On the other hand, the Court denies Defendant's motion and will allow

Bremer to testify about Defendant's failure to avail itself of the 7(k) exemption and its failure to pay overtime to Loganville firefighters.

## BACKGROUND

### I.     Allegations in Plaintiffs' complaint

Plaintiffs, all current or former firefighters for Defendant, the City of Loganville, Georgia ("the City"), have filed a collective action complaint under the Fair Labor Standards Act ("FLSA") against the City alleging that the City failed to compensate them for all overtime and nonovertime hours worked.  The complaint alleges that the City violated the FLSA "by denying Plaintiffs' mandatory overtime pay at the rate of one and one-half times their regular hourly rate for hours worked over 40 in any given work week."  Plaintiffs have also alleged that they are owed compensation at their regular rate of pay for certain nonovertime hours worked.

The alleged violations arose as a result of the work schedule the City used to pay its firefighters.  According to Plaintiffs' complaint, which describes the work shifts:

> Plaintiffs are regularly scheduled to work 24 hours 'on' and 48 hours 'off,' in rotating shifts designated as Shifts A, B, and C. Accordingly, in any given work week, Plaintiffs are scheduled to work either 48 hours or 72 hours, depending on the shift.  Plaintiffs thus are scheduled to work either 8 or 32 hours above 40 in every work week, for which they are required by law to be paid wages at overtime rates. In addition, from time to time Plaintiffs are called upon to work additional, unscheduled overtime in the event of accidents or emergencies. Plaintiffs are also required to attend various mandatory Fire Department meeting and events, all of which is additional overtime work for which Plaintiffs have been denied proper overtime pay.

### II.     Defendant's response to Plaintiffs' complaint

Defendant filed an answer to Plaintiffs' complaint, denying all Plaintiffs'

claims, and asserting that it had compensated Plaintiffs according to FLSA's requirements. In its brief supporting the motion to exclude, Defendant explains that the City has availed itself of a partial exemption under section 7(k) of the FLSA. This exemption allows public agencies employing firefighters and law enforcement personnel to opt out of the standard overtime requirements for its employees. The City argues that pursuant to this exemption, it has established a 28-day work period, meaning that no overtime is owed the firefighters until after they work over 212 hours. For firefighters who work more than 212 hours, the City provides compensatory time ("comp time") in lieu of overtime pay. Comp time is awarded at a rate of time and a half, meaning the firefighters earn one and one half hours of comp time for every hour of overtime work they perform.

### III.    Defendant's motion to exclude Bremer's expert opinions

Bremer offers expert opinions about Defendant's failure to pay overtime to Plaintiffs, and Defendant seeks to exclude such opinions contending that Bremer cannot satisfy the requirements of Fed. R. Evid. 702. For purposes of the <u>Daubert</u> analysis required by this motion, Defendant specifically contends that the Court should exclude Bremer's opinions: 1) because he lacks the requisite expertise to offer testimony about the section 7(k) exemption, 2) because the methodology underlying his reasoning is unreliable, and 3) because his testimony will not assist the trier of fact. The court will consider Bremer's deposition and report and other evidence in light of Defendant's objections.

### IV.    Bremer's expert credentials

The Court will summarize Bremer's credentials and work experience.  In this summary the Court attempts to include an objective overview of the facts supporting his expertise and also the facts that raise questions about his qualifications to testify in this case.  This summary includes apparent conflicts in his testimony and report.

Bremer graduated from Southwest Missouri State University in 1974 with a B.S. in business management.  He attended graduate school at Florida International University, but he completed only about half of the course requirements for a Master's degree.  He has no other formal education.

Regarding pertinent job history, Bremer started work as a wage and hour compliance officer for the Department of Labor in 1974.  In that position he learned the investigative techniques of the United States Department of Labor Wage and Hour division.  He also learned the wage and hour regulations of the Department of Labor.

During  his career with the Department of Labor, Bremer  proceeded up the ranks of the Wage and Hour Division and assumed more responsibility for enforcing wage and hour requirements.  In 1983, he was promoted to assistant district director. As assistant district director, Bremer supervised caseworkers and reviewed their investigations.  He held the position of assistant district director for approximately five years until 1989, when he became the executive assistant to the regional administrator of the U.S. Department of Labor Employment Standards Administration in Atlanta.  As the executive assistant, Bremer handled personnel matters and compiled statistics for the regional administrator.

In 1990 Bremer became district director for the Atlanta district office of the U.S.

Department of Labor Wage and Hour Division.  In that position he supervised three assistant district directors and approximately thirty-four investigators.  According to Bremer, that supervision primarily involved "putting out a program plan for the year."

The program plan included estimating how many investigations to do in a year and deciding what areas of the district economy to focus on, like agriculture, poultry processing, or fast food restaurants.  Bremer's testimony about the program plan implies that he focused on deciding how to best use the Department of Labor resources in his district to enforce the wage and hour laws.  He testified that he also reviewed investigations of "nonnormal" situations such as big cases.

Bremer stayed in the district director's position in Atlanta until 1996.  He then moved to Little Rock, Arkansas, where he also served as district director.  He retired from the Department of Labor in 1997.  After retiring he started several consulting businesses.  As a consultant he  provides advice to clients about  wage and hour regulations, but he primarily helps farmers obtain work visas for seasonal agricultural and nonagricultural workers, which involves 90% of his consulting work.  He testified during his deposition, however, that he spends 90% of his time dealing with wage and hour compliance issues.  Aproximately 60% of his clients are in agriculture.

Bremer has no public employers as clients in his consulting business except universities, which he helps with obtaining worker visas.  He has not advised a client on a case involving wage and hour issues for or against a fire department.  He cannot remember the date that he last worked on a case involving a 7(k) exemption since he left the Department of Labor in 1997.  When he served as district director, however,  he

would have supervised cases involving the 7(k) exemption.  He also would have answered inquiries from municipalities about the exemption for firefighters and policemen.

Bremer has neither published nor lectured on the 7(k) exemption.  He has qualified as an expert witness in four cases  but not in a case involving a 7(k) exemption.  He further testified on his deposition that he did not recall ever being involved in a 7(k) lawsuit in which the Department of Labor sued a police or fire department.  But in his report of April 26, 2005, he states: "I have been involved in numerous investigations of state and local government employers and specifically numerous investigations involved with firefighters."

### V.  Bremer's deposition testimony and expert report

According to Bremer's deposition, Plaintiffs' counsel asked him to use his expertise to determine whether Defendant properly paid its firefighters.  Bremer reached his opinions in this case based on the "methodology" described in his deposition and in his report.  The Court will first describe what he did to formulate his opinions and then describe what he did not do.

First, regarding what he did to reach his opinions in the case, Bremer reviewed Defendant's time records of its firefighters that showed pay and hours worked each week.  He reviewed a job memo entitled "firefighter" that described pay, job requirements, and job functions of Loganville firefighters.  He reviewed a memo about fire department pay policy from Kristi Ash, the Loganville Deputy Clerk in charge of payroll, to Michelle Deaton, the Loganville City Clerk.  He also reviewed several

calendar entries showing the tentative work schedules of firefighters.  In addition, he reviewed several printouts of time worked and comp time accrued by firefighters and other documents from Defendant, including a fire department memo about how the firefighters' hourly rate is determined and another memo about pay period ending and holiday information.  He also reviewed the deposition of Michele Deaton.  Finally, he reviewed Plaintiffs' complaint and talked to Plaintiffs' attorney about their claims.

From the Department of Labor, Bremer reviewed several fact sheets on FLSA, including one on state and local governments and another on police and firefighters.  He reviewed applicable provisions of the Code of Federal Regulations on FLSA.  He consulted Mr. Genkos, an assistant district director for the Department of Labor, and requested  opinion letters on firefighters and salaried positions.  Mr. Genkos sent him one opinion letter, which discussed how to pay an employee on a salary basis under the 7(k) exemption.

Second, regarding what Bremer did not do to form his opinions, he did not talk to Plaintiffs or any of Defendant's employees, past or present.  He did not visit the fire department or any other department of the City of Loganville.  He has not had any conversation with anyone other than the lawyers representing the Plaintiffs, except Jeff Genkos.

## VI.    Bremer's opinions

For purposes of this Order, Bremer's opinions about the City's FLSA violations fall into three categories.  First, Bremer testified that the City simply failed to pay overtime to its firefighters and that its pay plan failed to qualify for the (7)k exemption.

Second, he testified that even if the City's pay plan did qualify for the 7(k) exemption, the city paid its firefighters for 40 hours of work per week, and the firefighters are therefore due compensation at their regular rate of pay for all hours worked between 160 and 212 in a 28-day work period.[1]  Third, Bremer testified that the City's failure to properly pay its firefighters amounted to reckless disregard of FLSA requirements.

To summarize the first category of opinions, Bremer stated in his report that  the "City of Loganville attempted to take advantage of the 212 firefighter overtime exemption and the method of paying overtime by giving 1 ½ hours of comp time for each hour of overtime worked."  Bremer opined that the City attempted establish a 28-day work period pursuant to the 7(k) exemption, but failed to do so.  Bremer further opined that the City's practice of paying a salary was inconsistent with its practice of awarding comp time in lieu of overtime pay, and that when the City awarded comp time, it did so inconsistently.

To summarize the second category of Bremer's opinions, he stated in his report that the firefighters "are due their straight time rate ... for all hours worked up to 212 in a 28 day period."  Based on his review of the payroll records, time sheets, and fire department memos, Bremer opined that "the firefighters were paid for 40 hours times 4 weeks, or 160 hours in the 28-day period and would be due 52 hours per pay period at their correct hourly rate."

---

[1]
    Bremer refers to this compensation as "straight time" compensation.  This type of claim–for compensation at an employee's regular rate of pay for nonovertime hours worked–is also frequently referred to as a "gap time" claim.  See, e.g., Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1267-68 (4th Cir. 1996).  For clarity and consistency, the Court will refer to such claims as "gap time" claims.

The third category of Bremer's opinions involve the question of Defendant's reckless disregard of the FLSA.  Although Plaintiffs' counsel did not ask Bremer to render an opinion on the mental state of Defendant's employees, Bremer concluded that Defendant recklessly disregarded FLSA.

Bremer reached his opinion about Defendant's reckless disregard of FLSA requirements based on the facts that Defendant had ample documentation in its possession to know how to comply with the Fair Labor Standards Act, that Defendant had the "wherewithal to ask somebody about it," and that City Clerk Michelle Deaton said in her deposition that she had talked to individuals at the Department of Labor about the firefighter pay plan.

Bremer conceded on his deposition, however, that he did not know what Deaton had told the Department of Labor or what the Department of Labor had told her.  He further admitted that the Department of Labor could have blessed Loganville's plan that Deaton described to the its representative.  He also admitted that he did not know what the City's auditors said about the pay plan during their yearly review.  Furthermore, he did not review the auditors's reports and has no idea if the auditors blessed the pay plan for Defendant's firefighters.

## DISCUSSION

### I.        The requirements of Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony.  Rule 702 provides that:

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence or to

> determine a fact in issue, a witness qualified as an expert
> by knowledge, skill, experience, training, or education,
> may testify thereto in the form of an opinion or otherwise,
> if (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles
> and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Thus, relevant expert testimony is admissible only if the trial court

finds that: (1) the expert is qualified to testify about the matters he intends to address;

(2) the methodology used by the expert to reach his conclusions is sufficiently reliable;

and (3) the expert's testimony will assist the trier of fact, through the application of

scientific, technical or specialized expertise, to understand the evidence or determine a

fact in issue.  McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir.

2002) (citing Maiz v. Virani, 253 F.3d 641, 664 (11th Cir. 2001)).  As a general

proposition, if expert testimony satisfies these three elements of Rule 702, the trial court

should admit the testimony.

 The burden of proof for admitting expert testimony falls on the party offering

the testimony.  McClain v. Metabolife Int'l, Inc., 401 F.3d 1233 (11th Cir. 2005).

Consequently, the proponent of the expert witness, in this case Plaintiffs, must show the

trial court that Bremer has the proper credentials to give the expert opinions, that he

used a valid methodology to reach his opinions, and that his opinions assist the trier of

fact.

 In ruling on  the admissibility of expert testimony,  the trial court should

consider the fountain-head case of  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579

(1993) and its progeny.  The United States Supreme Court explained in Daubert that the

trial court must act as a gatekeeper to decide what expert testimony the fact finder

should receive at trial.  Id. at 597.  As a gatekeeper the trial court must determine if the witness has the skill, experience, training and education to offer expert testimony. Poulis-Minott v. Smith, 388 F.3d 354, 359 (1st Cir.2004); see also United States v. Frazier, 387 F.3d 1244, 1260-61 (11th Cir. 2004).  The trial court must also "'conduct an exacting analysis' of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702."  Frazier, 387 F.3d at 1260.  Further, the court must ensure the relevancy of expert testimony. In other words, the testimony must assist the trier of fact.  Daubert, 509 U.S. at 591.  Thus, "[t]he judge's role [as a gatekeeper] is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value."  Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311-12 (11th Cir. 1999).  The Court will now scrutinize Bremer's expert opinions in light of the Rule 702 requirements.

### II.      Is Bremer qualified to testify?

The Court finds that Bremer is qualified to testify about the opinions he offers to support Plaintiffs' claims.  The Court recognizes that his testimony about his qualifications as outlined above raises questions about his experience with the issues in this case; however, a jury should decide those questions because they go to his credibility, not to the threshold issue of his qualifications.  Plaintiffs have offered enough evidence of Bremer's qualifications to let his opinions go to the jury.  See Daubert, 509 U.S. at 596 (suggesting that the jury is the ultimate arbiter of an expert's credibility, and stating that "[v]igorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Bremer worked for Department of Labor for approximately 23 years.  He started as  a complaince officer and moved up to the level of a district director.  He has spent a major part of his career working on wage and hour issues at various levels in the Department of Labor.  Since retiring from the Department of Labor, he has continued to work with wage  and hour issues.  Clearly, his experience as an employee of the Department of Labor and now as a consultant show that he understands and has worked with various wage and hour issues, that he understands the relevant Department of Labor rules and regulations, and that he has had ample experience in investigating or supervising the investigation of overtime claims to offer expert testimony in this case.  His experience includes work with the 7(k) exemption.

That he has not handled cases recently involving firefighters or the 7(k) exemption, that he has not advised clients on wage and hour issues, that he cannot remember when he last worked on a case involving a 7(k) exemption, and that he has not qualified as an expert before in a 7(k) exemption case, among other similar exceptions to his experience, do not defeat his credentials in this case.  As stated above, such facts merely go to his credibility, which is the province of the jury at trial, not the Court on this motion to exclude testimony.  See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (suggesting that credibility determinations must be left to the jury, and stating that "it is not the role of the district court to make ultimate conclusions about the persuasiveness of the proffered

evidence.").

### III.    Is Bremer's methodology reliable?

In <u>Daubert</u> the United States Supreme Court explained that "the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability," and this "*evidentiary reliability* will be based upon *scientific validity*." 509 U.S.  at 590 n.9.  "A <u>Daubert</u> analysis on an expert's methodology, therefore, focuses on the expert's method in forming opinions and asks the question—is the expert's method reliable?  In other words, are the expert's opinions *trustworthy*?" <u>J & V. Dev., Inc. V. Athens-Clarke County</u>, 387 F. Supp. 2d 1214, 1224 (M.D. Ga. 2005); <u>see also</u> <u>Daubert</u>, 509 U.S. at 590 n.9.

<u>Daubert</u>, however, requires neither perfection from an expert nor that he demonstrate a flawless methodology.  As the Supreme Court explained: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are  the  traditional and appropriate means of attacking shaky but admissible evidence."  509 U.S. at 596.  Thus, Rule 702 does not impose an unduly heavy burden of proof on the proponent of expert testimony.

To aid courts in assessing  the reliability or trustworthiness of an expert's scientific opinions, the Court in <u>Daubert</u> articulated four non-exclusive tests or factors that courts may use when evaluating expert testimony based on scientific knowledge: (1) testability, (2) error rate, (3) peer review and publication,[2] and (4) general acceptance. <u>Id.</u> at 593-95.  <u>Daubert</u> involved expert testimony about matters of science,

---

[2]        Some courts separate peer review and publication and refer to five <u>Daubert</u> factors.

but an analysis of expert testimony under Rule 702 covers not only expert testimony, it also includes non-scientific expert testimony as the Supreme Court later explained.

In <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), the Supreme Court expanded the <u>Daubert</u> analysis to include non-scientific expert testimony.  The Court there, however, rejected the notion that the factors set forth in <u>Daubert</u> were always relevant, noting that:

> The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in <u>Daubert</u>, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

<u>Id.</u> at 150.  The Court explained that the <u>Daubert</u> factors "may or may not be pertinent;" it will depend "on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  <u>Id.</u>  Other circuit courts and the advisory committee notes under Federal Rule of Evidence 702 offer other factors or tests to use in analyzing an expert's testimony.  <u>Id.</u> at 152. Furthermore, the trial court has "considerable leeway" in deciding which tests or factors to use to assess the reliability of an expert's methodology.  <u>Id.</u>

To properly analyze Bremer's expert opinions considering that he is a non-scientific expert, the Court must use this broad leeway to decide which tests to use to assess his methodology.  Because he is non-scientific expert, the tests outlined in <u>Daubert</u> offer little help.  (If the <u>Daubert</u> tests did apply in this case, Bremer could not satisfy any of them—the record demonstrates no proof of testability, no proof of error rate, no proof of peer review or publication, and no proof of general acceptance.)

The Court will consider the reliability of Bremer's methodology for all three categories of opinions he offers: (1) that the City violated FLSA by failing to pay overtime to its firefighters; (2) that Loganville firefighters are due "gap time" pay for hours worked between 160 and 212 is a 28-day period; and (3) that the City acted with reckless disregard of the FLSA in instituting and administering its pay plan.  Simply stated, the Court finds Bremer's methodology supporting his opinion that Defendant violated FLSA trustworthy enough to submit to the jury; however, the Court finds flaws both in his methodology for determining that Loganville firefighters are due "gap time" pay, as well as in his methodology for determining that Defendant acted with reckless disregard.  Accordingly, Bremer's testimony on those issues is excluded.  As the Court will explain, although Bremer's methodology suffices to show that the City violated the overtime provisions of the FLSA, that same methodology fails to establish that Loganville firefighters are due "gap time" pay, or to establish that the City acted with reckless disregard of FLSA.

As explained above, the Court must decide which tests to use to determine the reliability of Bremer's methodology.  Because the <u>Daubert</u> tests do not fit comfortably into this case involving a non-scientific expert, the Court will employ the tests described in the advisory committee notes under Rule 702.  The Court will apply these tests first to Bremer's testimony about the City's failure to pay overtime and failure to avail itself of the 7(k) exemption, then move to his opinion that Loganville firefighters are due "gap time" pay, and finally discuss his opinion that the City recklessly disregarded FLSA.

A.    Bremer's opinion about the City's overtime violations

Beginning with the first category of opinions offered by Bremer—that the City simply failed to pay overtime to its firefighters and that its pay plan failed to qualify for the (7)k exemption—the Court finds that the methodology underlying these opinions is sufficient.

The first test under the Rule 702 advisory committee notes considers whether the expert is offering opinions about matters growing naturally and directly out of his research independent of the case, or whether he has developed his opinions expressly for purposes of testifying.  Bremer satisfies this test.  Although he developed his opinions specifically for this case, they are the same type opinions that he would develop in advising  clients on wage and hour issues.  But more important, he has done the same type work in this case that he did while employed at the Department of Labor in ferreting out overtime violations.  His methodology in this case satisfies the spirit, though not the letter, of the first test.

The second test examines whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.  Bremer used as his accepted premises the facts that numerous City of Loganville documents reflected a 40-hour work week and that overtime was not consistently awarded to conclude that the City failed to avail itself of the 7(k) exemption and failed to properly compensate is firefighters for overtime work.  Bremer's conclusion follows logically from these premises.  Though other experts may reach a different conclusion after reviewing the same documents Bremer reviewed, it is not the province of the Court to evaluate the merits of Bremer's

opinions.  See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.. 326 F.3d 1333, 1341 (11th Cir. 2003).

The third test asks whether the expert has adequately accounted for obvious alternative explanations.  Bremer did consider Defendant's explanation of how it satisfied FLSA, and he accounted for errors in that explanation.  He acknowledged, for example, that the City had several documents referencing a 28-day, 212-hour work period, and then explained why, in spite of these documents, one could not assume that the City had availed itself of the 7(k) exemption.  Because Bremer offered an explanation for the only alternative explanations raised in the case, he satisfied the third test.

The fourth test evaluates whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir. 1997).  Bremer testified on his deposition about how the Department of Labor would investigate an overtime claim. He followed a number of those steps in this case.  He educated himself about Defendant's pay plan. He reviewed the pertinent regulations.  He computed the hours worked and the pay earned by the firefighters. But he did not talk to any of the Plaintiffs in this case. Although this is an essential step to a proper investigation based on his deposition testimony, he did review their complaint, and he also talked to Plaintiffs' attorney.  The Court finds that reviewing Plaintiffs' complaint and talking to their attorney satisfies the obvious need to understand an employee's complaints as an important step in a reliable investigation. Taking that step along with the others described in his report and

deposition convince the Court that Bremer exercised the requisite care in developing his opinions in this case.  He satisfied the fourth test.

The fifth test examines whether the expert's field of expertise  is known to reach reliable results for the type of opinion the expert offers in court.  Based on his work experience, Bremer easily satisfies this test.  Employees of the Department of Labor make hundreds of cases a year against employers for overtime violations.  Courts commonly accept the findings of Department of Labor employees as evidence to prove these claims.  Bremer has done what  Department of Labor investigators do to prepare an overtime claim for prosecution.  As a consequence, he satisfies the fifth test.

Bremer's first category of opinions satisfies the tests articulated in the advisory committee notes of Rule 702.  Accordingly, the Court finds that Bremer's methodology is sufficiently reliable to support these opinions.  Consequently, these opinions are admitted.

**B.	Bremer's opinion that the firefighters are due "gap time"**

Turning to the second category of opinions–that the firefighters are due "gap time" compensation for all hours worked between 160 and 212 in a 28-day work period–the Court finds these opinions are based on a flawed methodology.

Applying the first test the Court must consider whether Bremer's opinion concerns matters growing naturally and directly out of his research independent of the case, or whether he has developed this opinion expressly for purposes of testifying. Bremer's opinion that the firefighters are due "gap time" compensation fails the first test.  Though his opinion is based on his knowledge and understanding of the FLSA and

its corresponding regulations, his understanding of the regulations is flawed. Specifically, in formulating his opinion, Bremer ignored a widely-accepted rule of law that employers are not obligated under the FLSA to compensate employees for "gap time," as long as the employees receive at least the statutory minimum wage for all nonovertime hours worked.  E.g. Monahan v. County of Chesterfield, Va., 95 F.3d 1263, *passim* (4th Cir. 1996); Braddock v. Madison County, 34 F. Supp. 2d 1098, 1109-1112 (S.D. Ind. 1998); see also Robertson v. Bd. of County Comm'rs, 78 F. Supp. 2d 1142, 1159 (D. Colo. 1999) (collecting cases).  Because Bremer failed to take into account this rule of law in reaching his conclusion that Loganville firefighters are owed compensation for "gap time," his opinion is based on a flawed methodology.  See Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 780 (11th Cir. 2004) (affirming exclusion of expert opinion when expert failed to follow an established rule of law in formulating his opinion on the grounds that the opinion was based on a flawed methodology); cf. Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1322-23 (11th Cir. 2003) (affirming exclusion of expert opinion in an antitrust case when the expert's opinion was contrary to the state of the law on the grounds that the opinion was not "helpful to the trier of fact," and specifically noting that the expert's failure to differentiate between legal and illegal behavior resulted in the expert's finding "inferences of collusion where the law finds none.").

Likewise, on the second test, the Court finds that Bremer did unjustifiably extrapolate from an accepted premise to an unfounded conclusion.  Bremer used his knowledge and understanding of the FLSA and its regulations to reach his conclusion

that Loganville firefighters are due compensation for "gap time."  This conclusion,

however, is not readily apparent from the regulations, and is inconsistent with the stated

purpose of the FLSA.  See Monahan v. County of Chesterfield, Va., 95 F.3d 1263,

1266-67, 1273-84 (4th Cir. 1996) (discussing various regulations, DOL opinion letters,

and the purpose of the FLSA, and ultimately holding that "gap time" claims are not

cognizable under the FLSA absent a minimum wage violation).  Moreover, as discussed

above, Bremer's proposition is directly contradicted by almost every case that has

addressed such claims. See Robertson v. Bd. of County Comm'rs, 78 F. Supp. 2d 1142,

1159 (D. Colo. 1999) (collecting cases).

      For the same reasons, Bremer's opinion that the firefighters are due "gap time"

compensation fails the third test.  As discussed above, under the third test, the Court

must consider whether the expert accounted for obvious alternative explanations in

formulating his opinion.  Bremer did not even mention that his opinion had a

questionable basis in the FLSA, let alone attempt to account for this questionable basis.

      Bremer also fails the fourth test—whether he was "being as careful as he would

be in his regular work outside his paid litigation consulting."  Because of his failure on

the first three tests, and specifically because Bremer failed to even mention the

questionable legal basis in the FLSA for "gap time" claims, the Court does not believe

that Bremer exercised that level of care.

      Finally, because Bremer fails the previous four tests, the Court need not

consider whether Bremer satisfies the fifth test—that an expert in the field could offer a

reliable opinion on the same type of opinion that Bremer offers.  The Court has already

found serious methodological flaws with Bremer's opinion that the firefighters are entitled to "gap time" compensation.  Such flaws are sufficient to call into question the reliability of Bremer's opinion.  Accordingly, the Court excludes Bremer's opinion that Loganville firefighters are entitled to "gap time" compensation.

> **C.**     **Bremer's opinion that the City's acted with "reckless disregard"**

Having worked through these tests in analyzing Bremer's methodology for his opinions that Loganville firefighters are due overtime and straight time pay, the Court will now use the same tests to analyze his methodology for his opinion that the City acted with reckless disregard of FLSA.  On this issue the Court notes that Bremer's first analysis involved questions of math and the application of the wage and hour regulations.  The analysis on the question of reckless disregard, however, involves more than math and applying regulations; it focuses on the mental state of Defendant's employees.  Although  Bremer may be good at math and may know FLSA regulations, he has failed to convince the Court that he has used a valid methodology to uncover the mental intent required to show reckless disregard in this case.  The Court will now revisit the five tests from the Rule 702 advisory committee notes on the issue of reckless disregard.

First, the Court must consider whether Bremer is offering opinions about matters growing naturally and directly out of his research independent of the case, or whether he has developed his opinions expressly for purposes of testifying.  The Court notes that a former Department of Labor employee with Bremer's experience could have the expertise to give an expert opinion about a reckless disregard of FLSA under

certain facts.  Bremer, however, has not described the investigative techniques used at
the Department of Labor to reach such conclusions nor has he described any
methodology for determining a reckless disregard of FLSA.  He simply stated the bases
of his opinions.   Bremer leaves the Court in the position of relying on the *ipse dixit* of
the expert.  But the *ipse dixit* of an expert is not a valid basis for the admission of expert
opinion.  Gen. Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).

 The Court also notes that Plaintiffs' counsel did not ask him to reach an opinion
on this issue.  Bremer simply volunteered the opinion during his deposition.  Thus,
Bremer did not base his opinion on outside research independent of the case or even for
the purpose of testifying as requested by Plaintiffs' counsel, which casts more suspicion
on his methodology for finding a  reckless disregard of FLSA.  Bremer can not satisfy
this test.

 On the second test, the Court finds that Bremer did unjustifiably extrapolate
from an accepted premise to an unfounded conclusion. Bremer used as his accepted
premises that City of Loganville employees had ample documentation about FLSA
requirements, that they had the wherewithal to ask about overtime requirements, and
that at least one City employee did talk to someone from the Department of Labor.
These premises do not  lead to the logical and undisputable conclusion that  a  reckless
disregard of FLSA occurred. The premises, in fact, raise more questions than they
answer.  Even if these premises do somehow lead to the conclusion of reckless
disregard, at the very least, Bremer failed to explain how they do.  Bremer cannot
satisfy the second test.

On the third test, the Court finds that Bremer did not adequately account for an obvious alternative explanation about how Defendant could have failed to comply with the FLSA yet believed at the same time that it did comply with FLSA.   He has demonstrated no awareness of the legal distinction between human error in arithmetic or in complying with complex regulations versus the formulation of the requisite state of mind that amounts to reckless disregard.  Bremer's answers on his deposition  to defense counsel's questions about what Michelle Deaton did with the pay plan, who she had talked to about it, and most important why she believed that Defendant had complied with FLSA further demonstrate Bremer's failure to analyze this issue properly.  Bremer failed the third test.

Bremer also failed the fourth test — whether he was "being as careful as he would  be in his regular work outside his paid litigation consulting."  Because of his failure on the first three tests, the Court does not believe that Bremer exercised that level of care.

On the fifth test, the Court believes that an expert in Bremer's field could offer reliable opinions on the issue of reckless disregard, however, because Bremer failed the other four tests, the fact that an expert under certain circumstances could offer valid opinions can not salvage Bremer's methodological flaws on this issue.

Bremer's methodology on the reckless disregard question, if in fact he used a methodology, is fatally flawed.  The method is not reliable, and it does not produce trustworthy opinions.  As a consequence, the Court excludes Bremer's opinion that Defendant recklessly disregarded FLSA because he has not satisfied the reliability

requirements of Rule 702.

    **IV.**    **Will Bremer's testimony assist the trier of fact?**

    As the Supreme Court explained in <u>Daubert</u>: "Rule702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" <u>Daubert</u>, 509 U.S. at 591. The Supreme Court goes on to say that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." <u>Id.</u> at 591-92.

    This element of Rule 702 is sometimes called "fit." The trial court must find that the expert testimony fits the issues in the case. As the Tenth Circuit Court of Appeals has explained:

> A trial court must look at the logical relationship between the evidence proffered and the material issue that the evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'

<u>Bitler v. A.O. Smith Corp.</u>, 391 F.3d 1114, 1121 (10th Cir. 2004).

    To the extent that the Court has found that Bremer used a valid methodology to arrive at certain opinions in this case, those opinions will assist the trier of fact and satisfy the third element of Rule 702. This case involves questions about the application of complicated federal regulations for overtime payments and a special exemption for firefighters. Such questions are beyond the ken of lay jurors. Bremer's testimony will assist the jury to understand these complicated issues, assuming, of

course, that the jury decides to accept any or all of his testimony.

**CONCLUSION**

For the aforementioned reasons, the Court finds that Defendant's Motion to Exclude Expert Testimony of Plaintiff's Expert Daniel Wayne Bremer [Doc. 31] is **GRANTED in part** and **DENIED in part.**

**SO ORDERED** this 27th day of March, 2006.

S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge