IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| **JAMES D. DAVIS et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No.: 3:04-cv-68 |
| v. | : | |
| | : | |
| **CITY OF LOGANVILLE**, **GEORGIA**, | : | |
| | : | |
| | : | |
| Defendant. | : | |

*ORDER*

This case involves a collective action brought under the Fair Labor Standards Act ("FLSA"). This case was previously before this Court on the parties' cross-motions for summary judgment. In its order, the Court granted summary judgment in part and denied it in part. In addition, the Court held one issue in abeyance and directed further briefing. [Docs. 68, 71]. The parties submitted supplemental briefs [Docs. 71, 72], and after carefully considering the parties' briefs and the relevant law, the Court now **GRANTS** summary judgment in favor of Defendant on that issue.

Also before the Court is Defendant's Motion to Bifurcate [Doc. 74] the trial of this case. This issue was discussed in detail during the Pretrial Conference, held April 27, 2006. For the reasons discussed below, the Court **GRANTS** this Motion.

Finally, Defendant has filed a motion [Doc. 78] to prevent Plaintiffs Davis and Stribling from seeking damages for emotional distress relating to their retaliation claims. Plaintiffs have filed a response brief [Doc. 79]. For the reasons discussed below, the Court **GRANTS** this Motion.

**DISCUSSION**

I.    **Compensatory Time and Nonexempt Salary Pay**

Plaintiffs are seven firefighters currently or formerly employed by the City of Loganville, Georgia ("the City"). As firefighters, the Plaintiffs are "partially exempt" employees under Section 7(k) of the FLSA, 29 U.S.C. § 207(k), meaning that they are entitled to FLSA overtime protections. In its order on the parties' cross-motions for summary judgment, the Court, after reviewing the record and spending a considerable amount of time combing through the FLSA, its regulations, and case law, concluded that the City paid its firefighters a fixed annual sum (or "salary")[1] for their nonovertime hours, and that the City awarded compensatory time ("comp time") in lieu of overtime pay for the overtime hours they worked. In their Motion for Partial Summary Judgment [Doc. 35], Plaintiffs argue, among other things, that the City's practice of paying its firefighters a salary is inconsistent with its practice of awarding comp time in lieu of overtime pay. The Court, however, delayed its decision on this issue, and in a subsequent order, directed the parties to submit supplemental briefing. The parties have done so, and having considered their briefs, the authority cited therein, and other relevant law, the Court concludes that the FLSA does not prohibit such a practice.

To summarize Plaintiffs' position: Plaintiffs argue that the FLSA prohibits an employer who pays its nonexempt employees a "salary" for nonovertime hours from using the employees' earned comp time to cover the employees' time off. In the context of this case, Plaintiffs argue that the FLSA prohibits the City from using its firefighters' earned comp time to cover hours not

---

[1] As discussed below, the term "salary" has multiple meanings. These multiple meanings form the core of Plaintiffs' argument. In this Court's order on the parties' cross-motions for summary judgment [Doc. 68], as well as in the present order, the term "salary" occasionally is used as shorthand to describe the fixed annual amount Plaintiffs received, paid weekly, as compensation for all nonovertime hours worked.

worked when the firefighters work fewer than the normally scheduled number of nonovertime hours. Plaintiffs argue that by deducting time from the firefighters' earned comp time banks, the City effectively reduces the firefighters' salary, thereby invalidating the "salary" method of pay. To clarify, Plaintiffs do not appear to contest the practice of <u>awarding</u> comp time;[2] rather, it is the City's practice of <u>using</u> the firefighters' earned comp time, that, according to Plaintiffs, violates the FLSA.

As a preliminary matter, Plaintiffs' argument appears to exploit the multiple meanings of the term "salary." The term "salary" is somewhat of a term of art under the FLSA; it describes a method of compensating "administrative, executive, and professional employees." <u>See</u> 29 C.F.R. § 541.602 (2006); <u>see also</u> <u>Brock v. Claridge Hotel & Casino</u>, 846 F.2d 180, 184 (3rd Cir. 1988) ("Salary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task."). The term "salary" is also used in the FLSA to describe a method of compensating nonexempt employees by paying a fixed amount for fluctuating work hours. <u>See</u> 29 C.F.R. § 778.114 (2006). Elsewhere in the FLSA, as well as in common parlance, however, the term "salary" is often used to describe a practice of paying an employee a fixed sum of money for a set number of hours. <u>See</u> 29 C.F.R. § 778.113 (2006). In fact, as mentioned above in note 1, this Court occasionally uses the term "salary" as shorthand to describe the fixed annual sum Plaintiffs received, paid weekly, as compensation for

---

[2] In fact, Plaintiffs appear to admit that there is nothing wrong with <u>awarding</u> comp time to a nonexempt employee being paid a salary for nonovertime hours. <u>See</u> Plaintiffs' Supplemental Brief on Compensatory Time and Nonexempt Salary Pay [Doc. 72], at 1-2 ("If the employer simply allows compensatory time to accumulate and does not apply it to reduce the salary, the FLSA is not violated.").

the nonovertime hours they worked.[3]

Plaintiffs did not cite, and the Court through its own research could not locate, any provision in the FLSA that prohibited the practice that Plaintiffs protest. In fact, even Plaintiffs' expert, Daniel Bremer, admitted during his deposition that the FLSA regulations did not prohibit such a practice. See Deposition of Daniel Wayne Bremer [Doc. 37] 63:9-11 ( "[N]owhere in [29 C.F.R. § 553] does it say that you can be paid a salary and you can't be paid comp time. It doesn't say that."). Instead, to support their argument, Plaintiffs cite various regulations and cases discussing "salary" basis of pay. E.g., 29 C.F.R. § 541.602(a) (2006); Auer v. Robbins, 519 U.S. 452; Brock v. Claridge Hotel & Casino, 846 F.2d 180 (3rd Cir. 1988). These regulations and cases, however, are inapplicable to Plaintiffs. They refer to the method of paying "administrative, professional, or executive employees," who are exempt under the FLSA. As nonexempt employees, Plaintiffs are not paid by this method.[4]

Plaintiffs, nevertheless, argue that these regulations apply to them because they address a "salary" basis of pay. The regulations state that an employee paid on a "salary basis" must not receive a reduction in that salary based on the quality or quantity of work performed. 29 C.F.R. § 541.602(a) (2006). The "salary basis" described in these regulations, however, refers to the test used to determine whether a particular employee qualifies for the "administrative, professional, or executive" exemption. Moreover, in construing these regulations, courts have

---

[3] Many other courts similarly appear to use the word "salary" as shorthand to describe such a method of payment. See, e.g., Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1265-66 (4th Cir. 1996).

[4] Plaintiffs do not argue that they fall under the "administrative, professional, or executive" exemption, and, in fact, the regulations addressing exempt employees specifically foreclose this argument. See 29 C.F.R. § 541.3(b)(1) ("[the administrative, professional, and executive] exemptions or the regulations in this part do not apply to ... firefighters ... who perform work such as preventing, controlling, or extinguishing fires of any type.") (emphasis added).

held that deductions from an employee's paid leave bank do not affect that employee's status as a salaried employee.  E.g., Barner v. City of Novato, 17 F.3d 1256, 1261-62 (9th Cir. 1994).  Thus, even if the regulations cited by Plaintiffs applied, which the Court finds they do not, the City's practice of reducing its firefighters' comp time banks would not, as Plaintiffs argue, invalidate their salary basis of pay or otherwise violate the FLSA.

The Court's conclusion that the City's practice of paying its firefighters a salary while using their earned comp time to cover their time off is consistent with the purpose of the comp time provision.  The comp time provision permits state and local government employers to choose to compensate nonexempt employees for overtime work by awarding them comp time in lieu of overtime pay.  29 U.S.C. § 207(o) (1998).  The provision was added as an amendment to the FLSA in order to ease the financial burden of complying with the FLSA on state and local governments, which, unlike private employers, cannot pass operating costs associated with overtime pay to its consumers.  Collins v. Lobdell, 188 F.3d 1124, 1129 (9th Cir. 1999) (citing S.Rep. No. 159, 99th Cong., 7 (1985), reprinted in, 1985 U.S.C.C.A.N. 651, 655,56). Pursuant to this provision, employees who receive comp time are entitled to "use" that time to take time off work with full pay.  Christensen v. Harris County, 529 U.S. 576, 578, 120 S.Ct. 1655, 1658 (2000).  In some circumstances, employers may "cash out" comp time hours by paying the employee cash compensation for unused comp time.  See id. at 580, 120 S.Ct. at 1659.

The comp time provision makes it clear that comp time is used to allow employees paid time off without a reduction in pay.  A nonexempt employee who receives a salary for the nonovertime hours worked essentially agrees to receive a fixed sum of money in exchange for the nonovertime hours he works.  Since the employee's salary compensates him for the number

of nonovertime hours he is scheduled to work, if he fails to work all of his scheduled hours, he normally would not be entitled to receive his full paycheck. When an employer awards comp time in lieu of overtime, however, the employer may use time from the employee's earned comp time bank to cover any deficits instead of reducing the employee's paycheck.

Plaintiffs' theory runs afoul of the comp time provision. Since Plaintiffs concede that there is nothing wrong with the City's practice of <u>awarding</u> comp time, only with its practice of <u>using</u> it, <u>see</u> <u>supra</u> note 2, a salaried nonexempt employee who earns comp time in lieu of overtime is not able to use it. As Defendant points out, "[i]f employees are not permitted to use their accrued comp time for paid time off, comp time becomes a nearly valueless form of overtime compensation."

Plaintiffs' theory would leave employees no alternative but to stockpile comp time and use it to force public employers to "cash out" their earned comp time. <u>See</u> <u>Christensen v. Harris County</u>, 529 U.S. 576, 580 120 S.Ct. 1655, 1659 (2000) (discussing FLSA regulations related to the accrual and preservation of comp time). In addition to rendering comp time a nearly valueless form of compensation, this practice would contravene the purpose of the comp time provision, which was intended to relieve the financial burden of overtime compensation on state and local governments.

Having considered the regulations and cases cited by Plaintiffs, regulations and cases discussing the comp time provision, and the purpose of the comp time provision, the Court concludes that the FLSA does not prohibit the City's practice of paying its firefighters a fixed annual amount for the nonovertime hours they work while using their earned comp time to cover their time off. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on

this issue.

## II.     Motion to Bifurcate

Defendant has also filed a Motion to Bifurcate [Doc. 74] the trial of this case on the issues of liability and damages. Plaintiffs did not file a response to this motion, but have indicated they had no objection to bifurcation. Defendant's motion was discussed in depth during the pretrial conference, held on April 27, 2006. Pursuant to this discussion, the Court **GRANTS** Defendant's motion.

Rule 42(b) of the Federal Rules of Civil Procedure permits a court to order a separate trial of any claim or issue. The decision to bifurcate a trial is committed to the sound discretion of the trial court. Home Elevators, Inc. v. Millar Elevator Serv. Co., 933 F. Supp. 1090, 1091 (N.D. Ga. 1996). In deciding whether to bifurcate a trial, a court should consider the convenience of bifurcation, judicial economy, and the risk of prejudice. See Alexander v. Fulton County, 207 F.3d 1303, 1324-25 (11th Cir. 2000). Having considered the complexity of this case, the discreteness of the issues to be tried, the likelihood of confusion to the jury, and the convenience of bifurcation, the Court finds bifurcation of the issues of liability and damages to be appropriate. In addition, after discussing the matter with the parties, the Court finds it appropriate to permit the jury to consider the retaliation issue separately. Even though retaliation issues are often tried together with other issues with little danger of juror confusion, separate consideration of Plaintiffs' retaliation claims is appropriate in this case, since their claims are entirely separate from their FLSA overtime and damages claims, and since their claims involve only two of the seven plaintiffs.

Therefore, pursuant to the discussion at the pretrial conference, the Court makes the

following rulings:

>   (1)   The issue of liability, specifically, whether the City established a 7-day or 28-day work period, shall be tried separately from the issues of damages and retaliation.
>
>   (2)   The parties shall, if possible, attempt to stipulate to the amount of time the Plaintiffs worked. If the parties are able to do so, the Court shall calculate the amount of damages due Plaintiffs. If the parties are unable to arrive at an agreement, the issue shall be presented to the jury.

### III. Motion Regarding Plaintiffs' Claim for Emotional Distress Damages

Defendant has filed a motion [Doc. 78] to prevent Plaintiffs Davis and Stribling from seeking damages for emotional distress relating to their retaliation claims. Through its motion, Defendant argues that Plaintiffs are barred from seeking damages for emotional distress[5] by the doctrine of estoppel.

The doctrine of estoppel operates to preclude a party who has made a representation "from asserting rights which might perhaps have otherwise existed as against another person, who in good faith relied upon such [representation], and was thereby led to change his position for the worse." E.g., Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Perform. Marine Corp., 16 F.3d 1133, 1138-39 (11th Cir. 1994) ("Marine Transp. Servs."); 31 C.J.S. *Estoppel and Waiver* § 58 (2005). The doctrine is "not limited to a particular factual situation," nor is it subject to fixed rules." 31 C.J.S. *Estoppel and Waiver* § 58 (2005). The doctrine requires: "(1) a representation of fact by one party contrary to a later-asserted position; (2) a

---

[5] The issue of whether damages for emotional distress are available in a FLSA retaliation case remains unsettled in the Eleventh Circuit. See Bogackai v. Buccaneers Ltd. P'ship, 370 F. Supp. 2d 1201, 1202 (M.D. Fla. 2005). Because the Court finds Plaintiffs' claims for such damages are barred by the doctrine of estoppel, the Court will not address the issue of whether such damages are available under the FLSA.

8

good faith reliance by another party upon the representation; and (3) a detrimental change in position by the later party due to the reliance." Marine Transp. Servs, 16 F.3d at 1139.

Defendant's estoppel argument is based on representations made in a series of letters exchanged by Plaintiffs' and Defendant's counsel between May 25, 2005, and June 13, 2005, which discuss Plaintiffs' intent to seek damages for emotional injuries.  The exchange began after Plaintiff Davis testified during his deposition that he had sought medical treatment for stress, which was related to his termination, and that he intended to seek damages for his emotional injuries.

These letters clearly demonstrate that Plaintiffs had no intention of seeking damages for emotional distress.  In particular, the last letter, written by Plaintiffs' counsel, states:

> "It should be apparent from the pleadings in the case that neither Mr. Davis nor any other plaintiff has asserted any claim for medical damages, physical or emotional, nor does the FLSA allow for recovery of such damages.  We are therefore quite willing to confirm that no such claim is being made."

Plaintiffs argue that these letters should be read as suggesting only that Plaintiffs had no intention of seeking compensation for their medical damages related to their emotional distress. Plaintiffs argue that the letters say nothing about the pain and suffering Davis experienced, unrelated to his medical treatment, or about Stribling's emotional distress.

Plaintiffs' argument is unpersuasive.  The obvious logical conclusion that can be drawn from these letters is that Plaintiffs did not intend to pursue claims for emotional distress.  The hair-splitting distinction that Plaintiffs now make–between medical and non-medical damages–was not made in the letters.  Plaintiffs' argument is further undermined by their pleadings, which contain no hint of a claim for mental anguish or emotional distress.

Furthermore, Defendant changed its position to its detriment in reliance on this

9

representation.  After receiving Plaintiffs' June 13, 2005, letter, Defendant withdrew its subpoena for Davis's medical records, and otherwise abandoned its efforts to develop a defense to Plaintiffs' claims for emotional injuries.  Had Defendant obtained Davis's medical records, it may have learned that Davis's alleged mental anguish and emotional distress was caused by other events or circumstances independent of the alleged retaliation.  Likewise, Defendant would have had an opportunity to conduct a further investigation of Stribling's allegations that he was detained in Acting Fire Chief James D. Bright's office and questioned about the lawsuit.  Because of the letters exchanged between Plaintiffs' and Defendants' counsel, however, the opportunity to learn of other causes for Davis's and Stribling's alleged emotional injuries has been foreclosed.

In weighing the equities, it is clear that if one party must endure the consequences of this miscommunication, it must be Plaintiffs.  Plaintiffs had the opportunity to make the distinction between medical damages and non-medical damages in their letters, but failed to do so.  Defendants could not have been expected to draw this fine distinction on their own from these letters.  Instead, they were entitled to believe, based on these letters, that Plaintiffs had no intention of pursuing a claim for emotional distress.  Accordingly, Plaintiffs' claims for emotional distress are barred by the doctrine of estoppel.

## CONCLUSION

For the reasons discussed in this Order, summary judgment is **GRANTED** in favor of Defendant on the issue of whether the City's practice of paying its firefighters a fixed annual amount for nonovertime hours while using their earned comp time to cover their time off violates the FLSA.  Likewise, Defendant's Motion to Bifurcate [Doc. 74] is **GRANTED**.  Finally,

Defendant's Motion to prevent Plaintiffs Davis and Stribling from claiming damages for emotional distress [Doc. 78] is **GRANTED.**

      **SO ORDERED** this 11th day of May, 2006.

                                                 s/ C. Ashley Royal  
                                                 C. ASHLEY ROYAL  
                                                 UNITED STATES DISTRICT JUDGE

AEG/ssh